UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| PAOLI PEAKS, INC., a Missouri Corporation, | ) ) | |
| Plaintiff, | ) ) | 4:11-cv-00078-RLY-TAB |
| vs. | ) ) ) | |
| PHILIP D. WEEKS, SALLY P. STOUSE, and VANN A. WEEKS, individually and as co-trustees of the TRUST ESTABLISHED UNDER THE LAST WILL AND TESTAMENT OF CHARLES MARVIN WEEKS, | ) ) ) ) ) ) ) | |
| Defendant. | | |

**ENTRY ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

On July 1, 2011, Plaintiff, Paoli Peaks, Inc. ("Paoli Peaks"), moved for a preliminary injunction under Federal Rule of Civil Procedure 65 to enjoin Defendants, Philip D. Weeks, Sally P. Stouse, and Vann A. Weeks, individually and as co-trustees of the trust established under the last will and testament of Charles Marvin Weeks (collectively, "Defendants"), and their respective agents, employees, attorneys, and persons with which they are in active concert or participation from entering onto land leased by Paoli Peaks from Defendants. Paoli Peaks also requests that Defendants be enjoined and restrained from conducting any form of logging and from cutting down and removing any timber, trees, or other foliage from the leased land without first obtaining permission from Paoli Peaks. On October 7, 2011, the court held an evidentiary hearing

1

on this matter and **GRANTED** Plaintiff's Motion for Preliminary Injunction for the following reasons.

I.    **Background**

On or about June 20, 1978, Charles Marvin Weeks and Carolyn E. Weeks, Defendants' predecessors, entered into a 99-year lease agreement ("Lease") with Paoli Peaks' predecessor of approximately 68 acres of wooded land on which Paoli Peaks and its predecessor have continuously operated a downhill ski area. (Defendants' Ex. A, Lease Agreement ("Lease")). On September 26, 1990, the estate of Charles Marvin Weeks and Paoli Peaks' predecessor entered into an amended lease agreement ("Amended Lease"). (Defendants' Ex. B, Amended Lease Agreement ("Amended Lease")). In 1997, Paoli Peaks acquired the assets of its predecessor, including the rights and obligations under the Amended Lease. Like its predecessor, Paoli Peaks operates a downhill ski area on the leased land. The ski operations depend on Paoli Peaks' ability to manufacture and maintain an adequate quantity and quality of artificial snow.

At the hearing on October 7, 2011, Tim Boyd ("Boyd"), president and CEO of twelve ski resorts, including Paoli Peaks, testified that on June 22, 2011, Philip Weeks ("Philip") approached Paoli Peaks employees Clint Cummins and Brad Jones at Paoli Peaks and told them of Defendants' intention to log the property. Paoli Peaks contends that Philip expressed an intention to log the entire property, also known as clear cutting, including trees along the ski runs. One week later, Philip returned and spoke with Matt Grenier ("Grenier"), general manager of Paoli Peaks, in the presence of Herb Music and

Barry Walls, reiterating his intention to log the property. Grenier also testified that he spoke with Vann Weeks ("Van") five to ten minutes later over the telephone, who told Grenier to stay out of his and Philip's business and that he was upset with Grenier's conversation with Philip.

Paoli Peaks called several witnesses at the hearing who testified that trees are important to the ski area, because they act as a wind break for the snow, insulate snow from the sun, add aesthetic value, and satisfy the customers' expectation of skiing in a natural environment. Boyd testified that fewer trees means that even more of the already sparse supply of water must be used to produce snow to replace melted and blowing snow, costing Paoli Peaks millions of dollars. As a result, Paoli Peaks would lose revenue and be forced to close. Grenier testified similarly, basing his opinions on the consequences of clear cutting. Finally, Joe VanderKelen ("VanderKelen"), president of Snow Machines, Inc., and having over thirty years of experience, testified as an expert. He also explained that trees are the biggest factor in protecting the snow from the sun and wind, and that tree removal would result in decreased revenue and increased costs, making it difficult for the business to be profitable. Like Grenier, VanderKelen's opinion was based on clear cutting.

While Boyd opposes clear cutting and selective cutting, he and Grenier acknowledged that some trees have been blown over by wind and that Paoli Peaks cuts timber that poses a safety problem. Grenier also testified that Paoli Peaks does not engage in selective cutting, but admits that three trees were cut before September 2009.

He does not know whether Defendants were given the opportunity to retrieve the cut timber as stated in the lease.

Defendants called Philip as a witness, but did not call an expert to rebut VanderKelen's testimony. Philip testified that he never expressed an intention to Paoli Peaks employees that Defendants wished to clear cut trees on the leased land; rather, he claims that he merely stated a desire to selectively cut and intended to spare any tree smaller than twenty inches in diameter. Furthermore, he insisted that selective cutting was necessary due to wind damage to trees from severe storms. He claims that Paoli Peaks failed to notify him when it cut timber in the past, contrary to a provision in the Amended Lease which states that "[a]ny timber cut from the leased premises (whether marketable or firewood) shall be the property of Weeks." (Amended Lease ¶ 7). Specifically, he was concerned about six fallen trees that Paoli Peaks had not allowed Defendants to remove and that were losing commercial value by the day. Philip also admitted that a contractor would need an easement to enter the leased land and conduct logging operations, but that Defendants have no right under the lease to grant easements over or under the leased land unless legally required. (Amended Lease ¶ 11 ("The Weeks may grant no easements over said property or under said property without the permission of Paoli Peaks, unless legally required to do so.")).

Paoli Peaks insists that a preliminary injunction is necessary to prevent the irreparable harm that would be caused by Defendants' logging the leased land. Defendants, on the other hand, contend that the selective logging they intend to do will

not result in irreparable harm; rather, they argue that the prevention of such logging will result in irreparable harm to Defendants.

## II. Discussion

A motion for preliminary injunction is analyzed in two phases: (A) a threshold phase and (B) a balancing phase. *Girl Scouts of Manitou Council, Inc., v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1085-86 (7th Cir. 2008). In the threshold phase, the moving party must prove that (1) absent a preliminary injunction it will suffer irreparable harm, (2) traditional legal remedies would be inadequate, and (3) its claim has some likelihood of succeeding on the merits. *Id.* If the moving party meets all the requirements of this phase, the court proceeds to the balancing phase, in which the court must balance the nature and degree of the plaintiff's injury, its likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the public interest. *Id.*

### A. Threshold Phase

Paoli Peaks claims that if logging is permitted on the leased land while this litigation is pending, Paoli Peaks will suffer irreparable harm for which it has no adequate legal remedy. Furthermore, Paoli Peaks believes that it will ultimately prevail on the merits. In contrast, Defendants argue that Paoli Peaks will not succeed on the merits or suffer irreparable harm, and in reality will not suffer any harm or damages to its business if Defendants log selective areas of the leased land.

#### 1. Irreparable Harm

Paoli Peaks provided testimony from multiple witnesses, including an expert, that

5

substantial logging operations on the leased land will irreparably harm the ski area, because trees play an integral part in downhill ski operations by blocking wind and providing shade, which preserves the snow, as well as adding to the area's aesthetic, natural beauty. Boyd even testified that selective cutting can never be a benefit to snowmaking. Philip testified that Defendants plan only to selectively cut trees, which Defendants claim would not interfere with the wind block or shade necessary to preserve the snow. Unfortunately, without expert testimony to rebut VanderKelen's testimony or convincing testimony to rebut that of Boyd, Defendants have failed to convince the court that selective cutting will spare Paoli Peaks from suffering irreparable harm. To replace any logged trees would take decades, and the increased costs of making more snow due to the lack of trees would force Paoli Peaks to close. Whether trees are clear cut or selectively cut, the harm is irreparable.

### 2. Legal Remedy

The survival of Paoli Peaks is at stake in this case. If the logging by Defendants occurs, then Paoli Peaks will be forced to cease its operations as a ski area. The loss of trees on the land cannot later be undone with monetary compensation. *See C.H. Payne*, 683 F.Supp.2d 865, 884 (S.D.Ind. 2010) (citing *Am. Comm. Lines, LLC v. Northeast Mar. Inst., Inc.*, 558 F.Supp.2d 935, 949 (S.D.Ind. 2008) ("[L]egal remedies are inadequate if damages would be inadequate to relieve the wrong.")). Accordingly, Paoli Peaks has met its burden to show that it will likely suffer irreparable harm for which there is no adequate remedy at law if a preliminary injunction is denied.

### 3. Success on the Merits

The last requirement of the threshold phase is that Paoli Peaks must prove a likelihood of success on the merits. At the hearing, Philip testified that unless legally required to do so, the Amended Lease prohibits Defendants from granting an easement over or under the leased land without Paoli Peaks' permission. (Amended Lease ¶ 11). He also admitted that the contractor conducting the logging operation would need an easement to enter the land. Based on these facts alone, Paoli Peaks would likely succeed on the merits.

What is more, the Amended Lease specifically grants Paoli Peaks the right to cut timber on the leased land; however, nowhere in the Amended Lease are Defendants granted the right to cut timber on the leased property. Under the familiar maxim of statutory construction, *expressio unius est exclusio alterius*, which in Indiana has also been applied to leases, what is expressed is exclusive when the lease grants a power or a right. *See Strauss v. Yeager*, 48 Ind.App. 448 (Ind.App. 1911) ("This maxim has been applied to the construction of written instruments, such as . . . leases . . . and is applicable to a statutory provision which grants originally a power or a right.") (internal quotation and citations omitted). The Amended Lease expressly grants Paoli Peaks the right to cut timber, but makes no mention of Defendants' right to log. If the timber cutting rights are exclusive to Paoli Peaks as this analysis indicates, then Paoli Peaks is highly likely to prevail on the merits of this lawsuit.

While Defendants may be entitled to the six trees that have fallen or been cut on

the leased land under the Amended Lease, they likely are not entitled to logging rights on the land.

### B. Balancing Phase

Because Paoli Peaks has satisfied the three requirements of the threshold phase, the discussion shifts to the balancing phase. Paoli Peaks' likelihood of prevailing at trial and the gravity of the harm it would suffer if significant logging takes place on the leased land has already been demonstrated and will be balanced against any possible injury to Defendants if the injunction is granted, as well as the public interest.

In their defense, Defendants claim they would suffer harm if selective cutting is not performed on the leased land. According to Defendants, who are not certified as experts in forestry, they need to maintain their property by cutting the weathered and /or abundant trees on the leased land "in order for it to remain in shape for hundreds of years to come so that they can pass it on to their children and grandchildren." (Response Brief 7). With neither expert testimony nor an explanation as to why logging is necessary to maintain the property, Defendants have given merely a conclusory statement and have failed to demonstrate any harm that will befall them if the injunction is granted. Moreover, the Amended Lease does not expire until 2078 and gives Paoli Peaks an option for renewal; therefore, the idea that the land must be maintained for the future enjoyment of Defendants' children and grandchildren carries very little weight. Additionally, Defendants present no argument as to why an injunction would violate the public interest. In sum, the gravity of the harm, likelihood of success, and lack of injury to Defendants or

8

the public interest if the injunction is granted all weigh in favor of Paoli Peaks. Because Paoli Peaks satisfies the requirements of the threshold and balancing phases, the injunction should be granted.

**III. Conclusion**

For the reasons set forth above, Paoli Peaks' Motion for Preliminary Injunction (Docket # 6) is **GRANTED**.

**SO ORDERED** this 23rd day of December 2011.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Thomas H. Bryan
FINE & HATFIELD
thb@fine-hatfield.com

Marilyn Tucker Fullen
TUCKER AND TUCKER, P.C.
lyn@tuckerandtuckerlawyers.com

Danny E. Glass
FINE & HATFIELD
deg@fine-hatfield.com

Philip C. Graham
HELFREY, NEIERS & JONES, P.C.
pgraham@hnjlaw.com

Kimberly Means Steuterman
HELFREY, NEIERS & JONES, P.C.
ksteuterman@hnjlaw.com

James Craig Tucker
TUCKER & TUCKER PC
jc@tuckerandtuckerlawyers.com