UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| PAOLI PEAKS, INC., a Missouri Corporation,<br>　　　　Plaintiff,<br><br>　vs.<br><br>PHILIP D. WEEKS, SALLY P. STOUSE, and VANN A. WEEKS, individually and as co-trustees of the TRUST ESTABLISHED UNDER THE LAST WILL AND TESTAMENT OF CHARLES MARVIN WEEKS,<br>　　　　Defendants. | 4:11-cv-00078-RLY-TAB |

**ENTRY ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Plaintiff, Paoli Peaks, Inc. ("Plaintiff"), moves for attorneys' fees pursuant to Indiana Code Section 34-52-1-1(b), against the defendants herein, Philip D. Weeks, Sally P. Stouse, and Vann A. Weeks, individually and as co-trustees of the Trust Established under the Last Will and Testament of Charles Marvin Weeks ("Defendants"), on grounds that Defendants initially asserted, and continued to assert throughout the litigation, frivolous, unreasonable, and groundless claims and defenses. For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

**I.      Factual Background and Procedural History**

Plaintiff operates a downhill ski area on approximately 68 acres of wooded land it leases from the Defendants pursuant to a Lease Agreement ("Lease"). The ski operations

1

depend on Plaintiff's ability to manufacture and maintain an adequate quantity and quality of artificial snow. In this regard, trees are important to the ski area because they act as a wind break for the snow, insulate snow from the sun, add aesthetic value, and satisfy the customers' expectation of skiing in a natural environment. Given the importance of trees to the ski area, the Lease granted the Plaintiff the right to "cut timber on the leased premises in order to improve the ski area." (Lease ¶ 5). Defendants were given the right to "[a]ny timber cut from the leased premises (whether marketable or firewood) . . . ." (*Id.*).

In June 2011, Defendants entered onto Plaintiff's Leased Land and informed Plaintiff's general manager that they intended to commence a logging operation on the Leased Land before the end of the month. In an effort to resolve the dispute without litigation, Plaintiff's counsel informed Defendants' counsel that pursuant to well-settled Indiana law and the terms of the Lease, Defendants' impending logging of the property would constitute a violation of the covenant of quiet enjoyment and trespass. Defendants' counsel responded that "extensive case law research" indicated that Plaintiff's position was "without merit," and there was "absolutely no legal authority that would prevent [Defendants] from cutting the timber on their property." (Plaintiff's Ex. B). Left with no other option, Plaintiff filed a Complaint for Declaratory Judgment and Injunctive Relief and a Motion for Preliminary Injunction on July 1, 2011.

The court held an evidentiary hearing on the Plaintiff's Motion for Preliminary Injunction on October 7, 2011. Plaintiff presented three witnesses, one of whom was a

snowmaking expert from Michigan, who testified that trees are the biggest factor in protecting snow from the sun and wind, and tree removal would result in decreased revenue and increased costs, making it difficult for Plaintiff to be profitable. Defendants called one witness, Philip Weeks ("Weeks"). Although Weeks testified on direct examination that neither he nor a family member ever had an intention to clear cut trees on the Leased Land, he testified to just the opposite on cross-examination. (*See* Transcript of Testimony of Philip Weeks, Docket # 52 at 20 (admitting that he informed Plaintiff's general manager that he wanted to set up a logging operation to log the property)). Not only did Weeks admit Defendants' intention to log the property, he also admitted that the Amended Lease did not grant Defendants the right to do so, (*id.* at 21-22) ("Q: And nowhere in the lease does it say that the Weeks shall have the right to cut timber, does it? . . . A: No."), nor the right to grant an easement to, for example, a logging company (*id.* at 21). To that end, Weeks admitted that under the terms of the Lease, Plaintiff had the right of possession and use of the Leased Land. (*Id.* at 22). At the conclusion of the hearing, the court orally granted the Plaintiff's Motion. A formal written Entry followed.

On October 12, 2011, Defendants filed a Motion for Leave to File An Amended Answer and Counterclaim, where the Defendants admitted on paper for the first time that "it was their intention to conduct logging and/or timber removal on the Leased Land." (Amended Answer ¶ 15, Docket # 44). Defendants also agreed to the entry of a Permanent Injunction "consistent with the ruling on the Preliminary Injunction." (*Id.* ¶ 20).

3

Defendants' Amended Answer also included an Amended Counterclaim for conversion and breach of contract. In the Amended Counterclaim,[1] Defendants alleged that, pursuant to the Lease, Defendants were entitled to the trees on the Leased Land that Plaintiff had cut down, and to trees that have been "uprooted," "broken off," and/or "blown over." (Amended Counterclaim, Counts I & II, Docket # 44). After the Magistrate Judge granted the Motion for Leave over Plaintiff's objection on January 25, 2012, Plaintiff filed a Motion to Dismiss and/or Strike all references to trees that have been "uprooted," "broken off," and/or "blown over." (Motion to Dismiss and/or Strike, Docket # 55). Plaintiff argued that the newly amended allegations were directly contravened by paragraph 5 of the Amended Lease, which only grants Defendants the right to trees that have been "cut" down. Rather than file a response in opposition, Defendants moved to voluntarily dismiss the Amended Counterclaim to the extent it referenced "uprooted," "broken off," and/or "blown down" trees. (*See* Voluntary Dismissal of Portions of Amended Counterclaim and Response to Motion to Dismiss, Docket # 59). The court granted that motion on April 23, 2012.

On February 22, 2012, Plaintiff filed a Motion for Judgment on the Pleadings based on Defendants' Amended Answer and the unambiguous language of the Lease. Defendants filed a cursory response asserting that, *inter alia*, they had a right to a

---

[1] Defendants original Counterclaim included a claim for breach of contract and conversion based upon the allegation that Plaintiff failed to turn over trees that Plaintiff had cut down to the Defendants, in violation of paragraph 5 of the Lease. (*See* Answer and Counterclaim, Docket # 19).

4

reasonable inspection of the land. On April 30, 2012, the court conducted a telephonic conference on the Motion. During the conference, Defendants ultimately admitted that they did not have a unilateral right under Indiana law to enter onto the Leased Land and conduct a "reasonable inspection." Accordingly, on that same day, the court granted the Plaintiff's Motion for Judgment on the Pleadings and entered a permanent injunction against Defendants from, *inter alia,* cutting trees and/or timber on the Leased Land, and from entering onto the Leased Land without the prior, express permission and direction of Plaintiff. (*See* Docket # 68).

This Motion followed.

## II.     Discussion

In a diversity case, state law governs a party's motion for attorneys' fees. *Jackman v. WMAC Inv. Corp.*, 809 F.2d 377, 383 (7th Cir. 1987) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975)). Accordingly, Indiana law governs the present motion.

Indiana Code Section 34-52-1-1(b) authorizes a trial court to award attorneys' fees as costs to a prevailing party if the other party:

> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

IND. CODE § 34-52-1-1(b). In the present Motion, Plaintiff proceeds under subsections

(b)(1) and (b)(2).

A claim or defense is "frivolous" if it is taken primarily for the purpose of harassment, "if the lawyer is unable to make a good faith and rational argument on the merits of the action," or "if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law." *Kahn v. Cundiff*, 533 N.E.2d 164, 170 (Ind. Ct. App. 1989). "[A] claim or defense is 'unreasonable' if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that claim or defense was worthy of litigation." *Id*. at 170-71. A claim or defense is "groundless" if no facts exist which support the legal claim presented by the losing party. *Id*. at 171. Because of the fear of deterring a litigant's access to the courts, a claim or defense is not groundless or frivolous merely because a party loses on the merits. *Id*. The decision to award fees under Indiana Code Section 34-52-1-1, and the amount thereof, is a matter of the court's discretion. *Knowledge A-Z, Inc. v. Sentry Ins.*, 857 N.E.2d 411, 424 (Ind. Ct. App. 2006) (stating that the decision to award fees and the amount thereof is reviewed for an abuse of discretion).

This whole case was centered around Defendants' contention that they were allowed to enter onto the Leased Land to conduct a logging operation, notwithstanding the unambiguous language of the Lease which prohibited them from doing so. Both before and immediately after this case was filed, Defendants argued that because there are no Indiana cases which hold "that the cutting of timber by a landlord constitutes a breach

of the covenant of quiet enjoyment,"[2] their entry onto Plaintiff's Leased Land to conduct a logging operation must be lawful. (*See* Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction at 6). In their Response in Opposition to Plaintiff's Motion for Preliminary Injunction, Defendants justified their position by arguing that the logging would not impact Plaintiff's skiing operation because the logging operation: (1) would include trees that are at least twenty inches round; (2) would include trees that have suffered weather-related effects that Plaintiff has "failed and/or refused to address;" (3) would take place in the off-season, and (4) would take place in areas that would not impact the ski runs. (*Id.* at 2-5). Defendants' "no harm, no foul" argument provides no support – under Indiana law or the parties' Lease Agreement – for Defendants' position.

In an attempt to distinguish their case from the multitude of cases cited by Plaintiff which hold that a landlord cannot enter the lessee's property without the lessee's permission, Defendants argued that their case was "unique because Plaintiff does not live on the property rented from Defendants but rather operates a business on Defendants' property during the ski season which runs for approximately 3-4 months each year." (*Id.* at 5-6). Defendants never adequately explained how Defendants' "unique" relationship

---

[2] The covenant of quiet enjoyment has been the subject of Indiana decisions since the mid-1800s. *See, e.g., Avery v. Dougherty*, 2 N.E. 123, 125 (Ind. 1885); *Grimes v. Alsop*, 7 Blackf. 269, 1844 WL 2976, at *1 (Ind. 1844). It serves to "protect[] the lessee from unlawful entries by the lessor upon the demised premises," and to "protect the possessory interests of the lessee in the beneficial use and enjoyment of the demised property." *Sigsbee v. Swathwood*, 419 N.E.2d 789, 797 n.8 (Ind. Ct. App. 1981) (citations omitted).

with Plaintiff impacted the court's analysis as to whether Defendants' entry onto the Leased Land violated the covenant of quiet enjoyment. To the extent Defendants were arguing that the covenant of quiet enjoyment only applies to residential properties, Defendants failed to provide any case law from this or any other jurisdiction to support that proposition.

Moreover, at the hearing on Plaintiff's Motion for Preliminary Injunction, Defendants' only witness, Philip Weeks, admitted: (1) he had informed Plaintiff's general manager that Defendants wanted to log the Leased Land and intended to set up a logging operation on the Leased Land; (2) the Lease did not grant Defendants the right to cut timber on the Leased Land; (3) Plaintiff had the right of possession and use of the Leased Land under its Lease; and (4) Defendants had no right under the Lease to grant easements over and under the Leased Land, which would have been needed to conduct logging operations. In light of this testimony and other testimony from the Plaintiff at the hearing, the court granted Plaintiff's Motion for Preliminary Injunction from the bench.

Despite Weeks' devastating testimony, Defendants filed a Motion for Leave to File An Amended Answer and Counterclaim that alleged, in pertinent part, that Defendants were entitled to trees that have been "uprooted," "broken off," and/or "blown over." After the Plaintiff was compelled to file a Motion to Dismiss and/or Strike because the allegations directly contravened the express provisions in the Lease, Defendants voluntarily dismissed those allegations. Ultimately, the case ended with Plaintiff's Motion for Judgment on the Pleadings, but only after the court held a telephonic

conference during which the Defendants admitted they had no right to a "reasonable inspection" of the land without Plaintiff's permission.

In the face of facts and law that are clearly against Defendants, they argue that the portion of their Amended Counterclaim that survives – i.e., that the Plaintiff cut down at least two trees and did not turn those trees over to Defendants – has merit. The fact that Defendants may have had a meritorious Counterclaim for conversion and breach of contract based upon the allegation that Plaintiff cut down two trees on the Leased Land and did not give them to the Defendants in contravention of paragraph 5 of the Lease does not persuade the court to change its decision. First, Defendants' Counterclaim is irrelevant to the issue of whether Defendants' defense of Plaintiff's claims was frivolous, unreasonable, and/or groundless. Second, Defendants have elected not to pursue the Counterclaim because, in essence, it is not worth the fight. (*See* Response to Order to Show Cause, Docket # 79).

The purpose of Indiana Code Section 34-52-1-1 is to strike a balance between "an attorney's duty of zealous advocacy and 'the important policy of discouraging unnecessary and unwarranted litigation.'" *See Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind. 1998) (quoting *Kahn*, 533 N.E.2d at 170). It is difficult to strike a balance in this case. At no time was the law from any jurisdiction, nor any terms of the parties' Lease Agreement, supportive of Defendants' defense to Plaintiff's claims. Defendants knew this, as best exemplified by Weeks' testimony at the hearing on Plaintiff's Motion for Preliminary Injunction. Yet, they continued to litigate the case; first by moving to amend

their Counterclaim with allegations that were not supported by the unambiguous terms of the Lease, and second, by asserting in their Response to Plaintiff's Motion for Judgment on the Pleadings that they had a right to a reasonable inspection of the Leased Land when in fact, they conceded only after the court's telephonic conference that they had no such right.  The court therefore finds this case crossed the line from zealous advocacy to unnecessary and unwarranted litigation.  Accordingly, the court **GRANTS** Plaintiff's Motion for Attorney Fees.

At the court's request, Plaintiff's counsel supported their fee request with an affidavit and appropriate documentation, reflecting that their bills amounted to $85,222.50.  (*See* Plaintiff's Supplemental Memorandum in Support of its Motion for Attorneys' Fees, Exs. 1-4, Docket # 80).  An award of fees is "limited to those fees incurred because of the basis underlying the award."  *Brant v. Hester*, 569 N.E.2d 748, 755 (Ind. Ct. App. 1991).  Because Plaintiff never should have been forced to bring this case in the first place, the court need not determine which claims or defenses advanced by Defendants should not be subject to fees.  The entire litigation is subject to fees.  As to the amount of the fee request, Defendants did not pose an objection in their Response Brief.  The court must therefore determine for itself whether the fee request is reasonable.  *Id.*  Having reviewed the documentation submitted by the attorneys of record in this case, the court finds the amount requested for the attorneys' time in this case is reasonable.  Accordingly, the court **GRANTS** Plaintiff's fee request in the amount of $85,222.50.

### III.     Conclusion

For the reasons stated above, the court finds that Defendants asserted both before and after the litigation commenced, frivolous, unreasonable, and groundless claims and defenses, despite ample opportunities to withdraw them. Defendants' actions resulted in the unnecessary expenditure of the time and resources of the court and of Plaintiff. Accordingly, Plaintiff's Motion for Attorneys' Fees is **GRANTED** (Docket # 70) in the amount of $85,222.50.

**SO ORDERED** this <u>18th</u> day of October 2012.

                                                                           _____
                                                                           RICHARD L. YOUNG, CHIEF JUDGE
                                                                           United States District Court
                                                                           Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.